CLARK HILL LLP
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Ali Bloom (SBN 347446)
abloom@clarkhill.com
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

Peter T. Berk (*Admitted Pro Hac Vice*)
IL ARDC No.: 6242515
pberk@clarkhill.com
130 E. Randolph
Suite 3900
Chicago, IL 60601
Telephone: (312) 985-5900
Facsimile: (312) 985-5999

Attorneys for Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN FERRIZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC., AND RED ROOF FRANCHISING, LLC<br><br>Defendant. | Case No. 2:24-cv-8622 SVW-AJRx<br><br>**DEFENDANTS' RULE 12 MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Stephen V. Wilson<br><br>Hearing Date: February 3, 2025<br>Time: 1:30 p.m<br>Ctrm: 10A |

**NOTICE OF MOTION AND COMBINED RULE 12 MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2025 at 1:30pm, or as soon thereafter as the matter may be heard, before the Honorable Stephen V. Wilson, in Courtroom 10A of the above-entitled Court, located at First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Defendants Red Roof Inns, Inc. and Red Roof Franchising LLC (collectively, "Red Roof" or "Defendants"), by and through its attorneys of record, will and hereby do move for an order dismissing the Complaint, ECF No. 1 ("Complaint"), with prejudice pursuant to Rules 12(b)(1), (6) and 12(c) of the Federal Rules of Civil Procedure ("FRCP").

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 24, 2024.

# TABLE OF CONTENTS


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 4

I. PLAINTIFF LACKS ARTICLE III STANDING ..... 4

A. Applicable Standards under Rule 12(b)(1) ..... 4

B. Ferriz Does Not Allege Facts Showing His Specific Personal Information Was Disclosed, or Allege Any Injury ..... 7

II. PLAINTIFF FAILS TO STATE A CIPA CLAIM ..... 9

A. Applicable Standard under Rule 12(b)(6) ..... 9

B. Ferriz Fails to Adequately Allege a CIPA § 631(a) Violation ..... 9

III. PLAINTIFF CONSENTED TO THE DISCLOSURE ..... 18

A. The Federal Rule of Evidence 201 Standard ..... 18

B. The Policies Establish Plaintiff's Consent ..... 19

IV. PLAINTIFF'S RIGHT TO PRIVACY CLAIM MUST BE DISMISSED ..... 20

A. Plaintiff Does Not Plead a Legally Protected Privacy Interest ..... 21

B. No Egregious Invasion of the Privacy Interest is Alleged, Or Could Have Occurred ..... 23

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Insurance Services*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 6

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 9

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8

*Byars v. Goodyear Tire and Rubber Co.*,
654 F Supp 3d 1020 (C.D. Cal. 2023) .......... 13

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 6, 8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 13

*Catsouras v. Dep't of California Highway Patrol*,
181 Cal. App. 4th 856 (4th Dist. 2010) .......... 21

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 18, 22

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C. D. Cal. Jan. 16, 2024) .......... 2, 9, 14, 16, 17, 23

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) .......... 9, 11, 12

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .......... 10

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (*per curiam*) .......... 9

*Folgestrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 23

*Food Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 3, 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) .......... 4

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d at 827 .......... 10

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp.3d 968 (N.D. Cal. 2014) .......... 20, 23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10, 13

*Hayden v. Retail Eqation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 4, 2022) .......... 21, 23

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2024 WL 1626114 (C.D. Cal. April 2, 2024) .......... 11, 13, 18

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 20, 21

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. April 29, 2022) .......... 6, 13

*In re Iphone Application Litig.*,
844 F. Supp 2d 1040 (N.D. Cal. 2012) .......... 24

*LaCourt v. Specific Media, Inc.*,
No. SACV-10-1256-GW, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .......... 6, 8

*Licea v. Am. Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .......... 9

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 16

*Lightoller v. Jet Blue Airways Corporation*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 1, 6, 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 21, 23

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 9

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 9

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 11, 12

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) aff'd, 380 Fed. Appx. 689 (9th Cir. 2010) .......... 24

*Shapiro v. AT&T Mobility*,
2020 WL 4341778 (C.D. Cal. May 18, 2020) .......... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4, 5

*Swarts v. The Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 10, 16

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. Apr. 7, 2020) .......... 18

*TransUnion LLC v. Ramierz*,
559 U.S. 413 (2021) .......... 1, 5, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*United States v. Texas*,
599 U.S. 670 (2023) .......... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 5, 8, 11, 16, 17

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 11, 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 15, 16

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 4, 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 13, 14

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) .......... 18

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14

## INTRODUCTION

The instant action is the latest iteration in a recent tidal wave of California Invasion of Privacy ("CIPA"), Cal. Civ. Pro. § 630 *et. seq*., putative class actions filed against companies that do business in the state and are alleged to use certain technologies on their websites. But several features make this Complaint distinct – and require its dismissal.

***First***, plaintiff Martin Ferriz ("Ferriz" or "Plaintiff") fails to allege any "concrete" or "particularized" harm to meet his burden of showing an Article III "injury in fact" required to sustain this action in federal court. Ferriz makes no factual allegations of harm – physical, economic, or otherwise –at all. Rather, this federal court putative class action Complaint gambles it's existence on allegations of a bare technical CIPA violation. Not only is this inadequate for injury-in-fact purposes under *TransUnion* and its progeny, but the CIPA violation is not sufficiently alleged in the first instance and therefore cannot provide a basis for Article III standing. *TransUnion LLC v. Ramierz,* 559 U.S. 413, 425 (2021).

Indeed, the theory of CIPA liability pursued by Ferriz here requires this Court to take a large and speculative leap based on: (i) a series of conclusory allegations concerning how an online technology known as the Meta Pixel may or could work under certain "example" configurations or deployments; and (ii) allegations that Ferriz *may have* provided his "guest record" information to Red Roof on an unspecified date and time and on an unspecified device when he "began" to make a hotel booking on the Website. But nowhere in the Complaint, including in the nearly 40-paragraph hypothesis on the Meta Pixel, does Ferriz actually allege a single *fact* to show that the Pixel was actually used or deployed to intercept Ferriz's information in a CIPA-violative manner. Instead, Ferriz wants this Court to connect a series of speculative dots and find that they could add up to Article III standing. Unfortunately for Ferriz, harm must be factually pled, not hypothetically theorized, even under

CIPA. *Lightoller v. Jet Blue Airways Corporation*, 2023 WL 3963823 * 3 (S.D. Cal. June 12, 2023) ("A bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact"). Plaintiff has not met his burden to show a concrete and non-speculative harm, and the Complaint must be dismissed for lack of Article III standing. (*Section I, infra*).

***Second***, Plaintiff expects the implication (as it is not even expressly pled) that the "guest records" information he says he provided to Red Roof will do the heavy lifting of sustaining his CIPA claim on the merits. But here too the Court should scrutinize – and not simply accept – what he *actually* alleged. Only three paragraphs in this 93-paragraph Complaint actually concern Ferriz. (Compl. ¶¶ 5-7). And none of those paragraphs provide the specific elements of information that Ferriz claims he provided to Red Roof, let alone state that he even completed his booking on the Website. The 90 other paragraphs purportedly reflect the "investigation of his counsel" and counsel's conclusory allegations of "systemic process[es]" occurring on the Website, and "examples" of how the Meta Pixel could be deployed. (Compl. ¶¶ Introduction, 8, 38, 52). Of those allegations, none provide a factual basis to demonstrate an actionable interception of any of Ferriz's "guest records," or any other qualifying information, on a particular date or time and on a qualifying device. As the CIPA claim is not adequately alleged, it must be dismissed under Rule 12. *See, e.g. Esparza v. Gen Digital Inc.*, 2024 WL 655986 (C. D. Cal. Jan. 16, 2024) (dismissing inadequately pled CIPA claim). Nor do these conclusory allegations provide an actionable basis for Ferriz's constitutional privacy claim. (*Section II and IV, infra*).

***And last,*** if this Court is to accept Ferriz's generalized and non-factual "systemic process" allegations - which it should not - those claims are completely undercut by Ferriz's express consent to Red Roof's Privacy Policy and Terms of Use, as well as Meta's Privacy and other policies. These policies advise him of the

exact practices about which he now complains. Because Ferriz authorized Red Roof's information sharing with its vendors, his CIPA claim cannot stand. (*Section III*, *infra*).

Rightly or wrongly, the plaintiffs' bar has leveraged CIPA to take aim at companies that do business in this state. But their "general legal, moral, ideological, or policy objection" to a website's use of online technologies like the Meta Pixel does not create Article III standing. *Food Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Nor does it satisfy the Rule 12 pleading standard. The Complaint fails for both reasons and must be dismissed.

## FACTUAL BACKGROUND

Red Roof is an American economy hotel chain that is headquartered in New Albany, Ohio. (Compl. ¶ 25.) Plaintiff is a California resident who alleges that he visited Red Roof's website (the "Website") to book a stay at its hotel sometime in February 2024. (*Id*. ¶ 7.) Plaintiff does not say whether he visited the Red Roof website on his desktop computer, mobile device, or via the Red Roof mobile app – critical missing facts. (*Id*.) According to Plaintiff, in connection with his booking he entered his desired destination and the dates he wanted to stay into the Website's booking feature. (*Id.*) After being presented with room availability, Plaintiff "selected a room at Red Roof's San Dimas location and [then] *began* the checkout process." (*Id.*) (emphasis added). Plaintiff does not state whether he completed that booking. Plaintiff states that he had an "actively maintained Facebook account" during the relevant time period, but also does not allege whether he was logged into his account at the time he visited the Website. *Id*. ¶ 6. This is the sum and substance of the factual allegations concerning Plaintiff Ferriz.

Separately, the Complaint alleges that Red Roof's website uses the Meta Pixel, (Compl. at ¶ 27), and that *in general* when a user looks for potential places to stay on Red Roof's website, the Meta Pixel may be deployed to collect and share

certain information with Meta. (*Id.* at ¶ 52.) Specifically, the Complaint alleges that – "***for example***" – Meta may collect Facebook ID, browser information, and parameters of the webpage viewed. (*Id.* at ¶¶ 52-63.) But, by Plaintiffs own allegations, the information which may be collected by the Meta Pixel depends on a variety of factors, including how the Meta Pixel is configured by the business, (*Id.* ¶¶ 36, 37), the type of device a user visits the website on, (*Id.* ¶ 41), and whether the user is logged into their Facebook account, recently logged out, or does not have an account at all at the time they visit the website. (*Id.* ¶¶ 54-57.)

The Complaint then includes an unverified screenshot purportedly of the Website. (*Id.* ¶ 52). According to Plaintiff, the screenshot shows that "activity data" and Facebook ID is transmitted to Meta from the Red Roof website. (*Id.* ¶ 53. The screenshot is not associated with Ferriz or his alleged visit, and has either been manipulated or is composed of information from different images. (*Id.* at Fig. 5.).

On these allegations, Ferriz seeks to represent a putative class of "all persons in California who have a Facebook account and who booked travel arrangements on www.redroof.com." (*Id.* ¶ 66).

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING

#### A. Applicable Standards under Rule 12(b)(1)

Article III standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). A "general legal, moral, ideological, or policy objection" does not create Article III standing. *Food Drug Admin.*, 602 U.S. at 381 (2024). Nor does a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

To establish standing under Article III, a plaintiff must demonstrate that: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable

to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *see Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023), *quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Conclusory allegations are insufficient as Plaintiff is required to "clearly . . . allege facts demonstrating each [standing] element." *Winsor*, 62 F.4th at 523, *quoting Spokeo*, 578 U.S. at 338. Even though the present action is brought as a putative class action, Plaintiff Ferriz must "allege and show that [he] personally [has] been injured." *Winsor*, 62 F.4th at 523 (internal quotations and citations omitted).

Simply alleging a violation of a statute is insufficient to confer Article III standing. *Spokeo*, 578 U.S. at 341. The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 426(*quoting Spokeo*, 578 U.S. at 341). As the Supreme Court in *TransUnion* further explained: "For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of . . . law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of . . . law." *Id. at* 426-27. Were this not the case, legislatures could "authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any . . . law." *Id.* at 428. Instead, "[o]nly those plaintiffs who have been "*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original).

Federal courts in this circuit have largely followed this distinction as it pertains to CIPA claims. For example, in *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, *1 (N.D. Cal. Oct. 10, 2023), the district court rejected the

plaintiff's argument that pleading a violation of CIPA Section 631(a) was sufficient to demonstrate Article III standing: "Plaintiff's argument is, at bottom, that every violation of CIPA—no matter how small or inoffensive—entails a privacy violation. Because Plaintiff has failed to allege any facts that suggest any "privacy injury" occurred, Plaintiff's citation to common law analogs of privacy violations is unavailing."

Similarly, in *Lightoller v. JetBlue Airways, Corp*., 23-cv-00361, 2023 WL 3963823 * 1 (S.D. Cal. Jun. 12, 2023), the district court found no Article III standing where the plaintiff did "not allege that she disclosed any personal information when she visited the website," she had failed to demonstrate a concrete harm that "bears a close relationship to the substantive right of privacy (*i.e.*, an individual's right to control information concerning his or her person)." *Id.* at *4; *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049– 50 (N.D. Cal. April 29, 2022) (finding the disclosure of basic contact information, e.g., email address, phone number, and username, inadequate to establish Article III standing); *LaCourt v. Specific Media, Inc.*, No. SACV-10-1256-GW (JCGx), 2011 WL 1661532, at *1 (C.D. Cal. Apr. 28, 2011).

Even where courts have allowed an alleged CIPA violation to provide the basis for Article III standing, they still require that the CIPA violation be *sufficiently alleged*. *See e.g., A.S. v. SelectQuote Insurance Services*, 2024 WL 3881850 *7-8 (S.D. Cal. Aug. 19, 2024). For instance, the court in *SelectQuote* compared the two approaches California district courts have taken to Article III standing for CIPA claims, before determining that because the named plaintiffs there had alleged facts

to show that their personal or sensitive information was collected and disclosed without their consent, their reliance on a CIPA violation alone could stand. But, as explained below, not only does Ferriz not allege any injury, he also fails to sufficiently plead facts which show the unauthorized collection and disclosure of his sensitive personal information. Thus, even if the Court accepts that a CIPA violation, standing alone, may satisfy Article III standing requirements (which it should not), Ferriz still does not meet this reduced burden.

### B. Ferriz Does Not Allege Facts Showing His Specific Personal Information Was Disclosed, or Allege Any Injury.

Although the Complaint is replete with conclusory "examples" of the "systemic process[es]" and varied ways by which the Website is alleged to share information with Meta (Compl. ¶¶ 8, 38, 52), it totally lacks in the allegation that *Ferriz* actually disclosed *his* personal information which was then intercepted by Meta. Of the three paragraphs that actually pertain to Ferriz, they at best only show that he went to the Website at some point ten months ago, entered a destination and date of a proposed stay, and "began the check out process." (Compl. at ¶ 7.)

But Ferriz does not allege any facts to show that his information was *in fact* collected and disclosed to Meta in one of the myriad theoretical ways explored in his Complaint, or the exact data elements which were allegedly intercepted. And Ferriz's references to "guest records" information under Cal. Civ. Code § 53.5(c) do not change this. The "destination and dates of stay" (which is the only information Ferriz alleges he inputted into the Website to search for room availability) do not constitute a "guest record" as this provision of the Code relates to information that "identifies an individual . . . including but not limited to their name, social security number [], date of birth [] drivers license number . . ." Cal. Civ. Code § 53.5. And, again, while Ferriz proposes to represent a class of persons who "*booked* travel

arrangements" on the Website, Ferriz himself does not allege that he ever did this, making the inputted information nothing more than indicia of a potential stay.[1]

An analogy is useful here: It is as though Ferriz has alleged that a stairwell was wet from rainfall and that, in multiple and different ways, individuals who walked down the stairwell could have slipped and fallen. And then, without more, Ferriz brings suit against the owner of the wet stairwell for liability. Included in the complaint are allegations about building code specifications and rainfall flow, and at best, the assertion that Ferriz walked down the stairs at some undefined time. But totally missing from the complaint is any allegation that Ferriz actually slipped and fell, *and* that he was injured in the resulting fall. Filling a complaint with technical allegations about the potential for an actionable harm is not an Article III injury-in-fact. ***An actual injury is required***.

Accordingly, this Court must dismiss Ferriz's Complaint for lack of Article III standing because it omits any allegations that Ferriz's specific sensitive or personal information was actually collected and disclosed in the complained of manner (to say nothing of allegations showing how Ferriz was harmed in the process). *See, e.g., TransUnion*, 594 U.S. 426-28; *Keurig Green Mountain, Inc.*, 2023 WL 6609351 at *2 ("Plaintiff has not alleged any facts . . . that support an inference [the statutory] violation injured her. So, Plaintiff has not met Article III's injury-in-fact requirement."); *Lightoller*, 2023 WL 3963823, *3-4 (allegations that plaintiff "obtain[ed] information on flight pricing" along with allegations of the use of "Session Replay Code" on the website were insufficient to support standing); *Byars*, 2023 WL 2996686 at *3-4; *LaCourt*, 2011 WL 1661532 at *3-5.

[1] Plaintiff's failure to allege that he booked a hotel stay on the Website may be intentional. For if Ferriz were to have booked a hotel stay on the Website, he would likely have been required to agree to a host of additional booking terms and conditions, and potentially even terms of Red Roof rewards programs. Red Roof reserves all rights to investigate and compel Ferriz's compliance with same should this case proceed.

## II. PLAINTIFF FAILS TO STATE A CIPA CLAIM

### A. Applicable Standard under Rule 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing, 556 U.S. at 678) (emphasis added). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Id.* at 1034-35 (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). However, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Iqbal*, 556 U.S. 677-79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see Gen Digital Inc.*, 2024 WL 655986 at * 2 ("The court, however, need not accept as true a legal conclusion couched as a factual allegation.") (internal quotation omitted).

### B. Ferriz Fails to Adequately Allege a CIPA § 631(a) Violation.

Plaintiff's first claim is for violation of Section 631(a) of CIPA. Section 631(a) contains four clauses: (1) intentional wiretapping; (2) willfully reading the "contents or meaning" of a communication in transit over a wire without consent; (3) attempting to use or disclose information obtained through either of the first two actions; or (4) aiding, agreeing with, employing, or conspiring with others to violate the prior three clauses. Cal. Penal Code §631(a); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293, *1 (S.D.

Cal. Aug. 5, 2024). Plaintiff fails to sufficiently allege that Red Roof violated any of these four clauses.

### i. The First Three Clauses of Section § 631(a) Do Not Apply to Red Roof, and Have Not Been Met.

To the extent the Complaint is an attempt to plead a violation of the first three clauses Section 631(a), it fails for the following reasons:

The ***first clause of Section 631(a)*** **(intentional wiretapping)** only applies to telephonic communications, and not internet communications. *See, e.g., Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *4 (C.D. Cal. Mar. 7, 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet."); *Swarts v. The Home Depot, Inc*., 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (courts have "uniformly" interpreted clause as excluding internet communications). Among the many pleading defects, Plaintiff does not allege how he visited the website – *i.e.*, via a desktop computer, smart phone or mobile application. The Complaint acknowledges, however, that on a mobile application Meta would utilize the MetaSDK, which is different from the Meta Pixel (though similar in purpose). Compl. ¶¶ 41-43. Ferriz's complete failure to allege how he accessed the Website requires dismissal of the Complaint on whole, and further renders application of § 631(a)(1) (requiring telephonic communications) improper.

The ***second clause of Section 631(a)(2)*** **(willfully reading the "contents or meaning" of a communication without consent)** does not apply to parties involved in the communication. *See* Cal. Penal Code §631(a); *Swarts*, 689 F. Supp. 3d at 744-45; *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017). The Complaint identifies Red Roof as a party to the alleged communication (e.g., Compl. at ¶¶ 38, 39, 80, 82, 84), meaning Red Roof cannot directly violate this clause.

Finally, the ***third clause of Section 631(a)*(use or disclosure information obtained through clauses (1) and (2))** requires a violation of either the first or second clause. *Swarts*, 689 F. Supp. 3d at 744. Since Plaintiff cannot establish that Red Roof directly violated either the first or second clause, he cannot establish that Red Roof violated the third clause. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827.

**ii. Plaintiff's Section 631(a) Aiding & Abetting Claim Fails.**

Next, to the extent the Complaint is an attempt to plead a Section 631(a) aiding and abetting claim, that claim also fails. A Section 631(a) aiding and abetting claim requires Ferriz to allege both: (a) express intent and knowledge of the underlying violation by Red Roof, and (b) an underlying violation by another person (*i.e.*, Meta). Ferriz fails both:

**a. Plaintiff Fails to Allege that Red Roof Acted with The Required Intent or Knowledge (And Did Not In Fact Do So).**

Section 631(a)'s fourth clause requires the defendant to "aid[], agree[] with, employ[], or conspire[] with [another] person to ***unlawfully*** do, or permit, or cause to be done" any of the actions prohibited by the other clauses in the section. Cal. Penal Code §631(a) (emphasis added). In order to satisfy the "unlawfully" requirement, the defendant must act intentionally or willfully. As the court in *UAG Escondido*, 2024 WL 3761293 at *2 stated:

> However, clause four does require that the accused "aids, agrees with, employs, or conspires with any person or persons to *unlawfully* do, or permit, or cause to be done any of the acts or things" set out in clauses one and two. Cal. Penal Code § 631(a) (emphasis added). The only way one could "unlawfully" commit one of those acts is by acting "intentionally" or "willfully."

(emphasis in original). Because Section 631(a) is a criminal statute, liability under the fourth clause only attaches if the defendant "knew the perpetrator intended to commit the crime and intended to aid and abet the perpetrator in committing the

crime." *Id.*, *citing* CALCRIM 401. This accords with recent CIPA caselaw from California district courts that have affirmed Section 631(a)(4)'s intent requirement. *See Valenzuela v. Kroger Co.*, 2024 WL 1336959, *4 (C.D. Cal. Mar. 28, 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (citing *Valenzuela*); *see also Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 1626114, *4 (C.D. Cal. April 2, 2024) (referring to clause four as an "aiding and abetting provision"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ("Section 631 also contains an aiding and abetting provision"); *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (requiring allegations that defendant knowingly and willfully abetted or aided to establish a claim under clause four).

Ferriz provides no factual allegations that establish (or even strongly suggest) Red Roof's intent. He does not allege that Red Roof knew Meta's actions were an alleged breach of duty or violated a statute, or that Red Roof agreed to assist Meta in a knowing breach of that duty, or otherwise intended that it be so. As in *UAG Escondido*, 2024 WL 3761293 at *2, *Kroger*, 2024 WL 1336959 at *4, *Rodriguez*, 722 F. Supp. 3d at 1124, and *Heiting*, 709 F. Supp. 3d at 1019, Plaintiff has failed to adequately allege Red Roof's intent, and his Section 631(a)(4) claim must be dismissed for this reason.

**b. An Underlying Violation By Meta is Not Adequately Alleged.**

Ferriz also fails to demonstrate an underlying violation of clause two of Section 631(a) The second clause of Section 631(a) creates liability for someone who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit . . ." Plaintiff has failed to plead that Meta (1) read or learned the contents of a communication, (2) that was "in transit," and (3) that it did so "willfully."

**c. No "Contents" Of A Communication Were Intercepted.**

Plaintiff fails to demonstrate the interception of the "contents" of a communication as a matter of law. In assessing this CIPA element, courts have distinguished between the interception of substantive contents of a communication (sufficient) and record information (not sufficient). Here, Plaintiff's minimal allegations relate only to non-actionable record information.

The Ninth Circuit addressed the distinction between contents and record information in *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014).[2] The *Zynga* court also looked at Fourth Amendment jurisprudence and its differentiation between contents of communications, which are entitled to privacy, and record information (in which no expectation of privacy exists), and found similar results. *Id.* Applying these principles, the Ninth Circuit concluded referrer URLs showing the webpage a user had previously been viewing were not content because such information functioned "like an address." 750 F.3d at 1107 (internal quotation omitted). Similarly, the court noted that pen registers that captured only the phone number dialed and address information on the outside of an envelope were not contents of private communications. *Id.* at 1108.

Since *Zynga*, Courts have shaped the distinction between "content" and "record" information under CIPA. Chat records are "content" information. *See e.g.*, *Heiting*, 2024 WL 1626114 at *8; *Byars v. Goodyear Tire and Rubber Co.*, 654 F Supp 3d 1020, 1027 (C.D. Cal. 2023)). On the other hand, generic information about the person's visit – such a "a person's name," "pages viewed," "date and time of the visit," "IP address [and] location," "browser type, and the operating system" – is considered non-content, or "record" information that is not actionable. *Yoon v.*

[2] In *Zynga*, the Ninth Circuit analogized the contents versus record information distinction under the Electronic Communications Privacy Act (ECPA) because it incorporates the federal Wiretap Act. *See also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

*Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021). See also *Zynga*, 750 F.3d at 1107 (Facebook ID is record information); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (user name and password is record information).

And to be sure, a plaintiff asserting a CIPA claim must make factual allegations sufficient to demonstrate that a third-party intercepted "content" information. *Gen Digital*, 2024 WL 655986, at *4. In *Gen Digital*, the district court held that the plaintiff's allegation of having "conducted a brief conversation with an agent of Defendant through the website chat feature," *Id.* at *1 (quoting complaint), combined with general allegations that defendant allowed third-party software (including Meta's Pixel software) to be "secretly" installed on the website, was insufficient to demonstrate interception of content information. *Id.* at *1-4.

As with the Plaintiff in *Gen Digital*, Ferriz's allegations that he visited Red Roof's Website, searched for information, and "began the checkout process," (Compl. at ¶ 7), combined with general allegations of "systemic process[ing]" and "example[s]" do not help Ferriz meet his requirement to "allege specific facts about what" of *his* information was intercepted. *Gen Digital*, 2024 WL 655986 at *4. Thus, Ferriz's general allegations that Red Roof website requires a user to enter other information – email, phone number, and payment information (Compl. ¶ 28), is insufficient because he never alleges that he: (a) entered that information into the Website, or (b) that information was intercepted to Meta Pixel ever sent such information to Meta.

But even if the Court were to consider Plaintiff's more general allegations, which are untethered to Ferriz's own visit to the Website, those allegations are still insufficient to establish an interception of the "contents" of a communication.

***First,*** browser identifiers and Facebook IDs allegedly collected by Meta, (Compl. ¶¶ 56; 58), are record information. *Yoon*, 549 F. Supp. 3d at 1082-8

(browser identifier); *Zynga*, 750 F.3d at 1107 (Facebook ID). Plaintiff's only other allegation regarding information shared with Meta is contained in a single alleged screenshot, which only includes parameters used by Red Roof to display the appropriate webpage such as relevant dates and city, which again is record information. (Compl. ¶ 52, Fig. 5); *See Zynga*, 750 F.3d at 1106-08.

Even if some of the information in Figure 5 could reasonably be "content" information, the screenshot's trustworthiness is questionable, even at this stage of the proceedings. First, Figure 5 does not indicate the date on which it was taken or any other information about the circumstances of its creation. (Compl. at Fig. 5.) Thus, there is no factual basis to believe – nor could Plaintiff cure this failure at this point, absent the ability to travel back in time – that this Meta Pixel information matched Plaintiff's – or anyone's – actual experience on the Website. This is important because websites are dynamic, and the business tools deployed on them change with time and based on the configurations of the individual visiting the site. Second, the call out box in that Figure has at least one change from the alleged screenshot – in the full screenshot, the "Pixel Location" is listed as "Show," but in the call-out box, the "Pixel Location" is listed as "Hide." (*Id.*) Thus, at least one of these portions of the Figure was either edited or created at a different time. Furthermore, the "PageView" section of the Pixel information is not revealed and has a yellow triangle, which normally indicates some issue with that section. (*Id.*) Finally, there is an "EVENT INFO" section that is not visible. (*Id.*) Given the lack of authenticity, reliability, and completeness of Figure 5, the Court should not consider it.

Therefore, Plaintiff failed to plead that Meta obtained contents of communications.

**1. No "In Transit" Interception is Alleged.**

Under the second clause of Section 631(a) a plaintiff must also allege that the

alleged interception occurred "in transit." Cal. Penal Code §631(a); *see Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, *8 (C.D. Cal. Nov. 27, 2023). Plaintiff must allege that the contents of the communication were acquired by the third-party during or contemporaneous with transmission. *Super Bright LEDs*, 2023 WL 8424472 at *8. Yet, Plaintiff presents no factual allegations to support this element of his claim.

Again, with respect to Plaintiff's own claim, he has scant allegations about *his* experience. None of those allegations describe how or when *his* information was intercepted. Again, *Gen Digital* is instructive. There, as noted above, the plaintiff described his interaction with the subject website and then made general allegations about the Meta Pixel and other related subjects. As the *Gen Digital* court noted, the plaintiff never provided "specific facts about . . . when the interception took place, and how the interception took place." 2024 WL 655986 at *4. Therefore, the court ruled, the plaintiff failed to plead an interception in transit. Here too, Plaintiff's limited allegations about his experience do not include allegations about "when the interception [of his information] took place, and how the interception [of his information] took place," and therefore he failed to plead an interception in transit. Thus, the claim should be dismissed.

Even if the Court considers Plaintiff's more general allegations, his claim still fails. While Plaintiff alleges that the information is sent to Meta by the Pixel "concurrent with," the communications with Red Roof (Compl. at 37), that the communications are "simultaneously and contemporaneously duplicated and sent to Meta at the same time as they are being sent to Red Roof," and that Meta's "interception occurs 'in transit'" (*id.* at 39) these are mere conclusions. Plaintiff alleges no specific *facts* to support them, including the timing or nature of the alleged "interception." Such conclusory allegations are insufficient. In *Gen Digital*, the plaintiff alleged that the software "'automatically acquires and transmits'

communications "without any active input' from humans," and that the interception occurred in real time. 2024 WL 655986 at *4. The *Gen Digital* court found these allegations "merely restated the pleading requirement" and were insufficient. *Id.*; *see also Valenzuela*, 674 F. Supp. 3d at 758 (plaintiff failed to provide "detail as to how the interception occurs," and thus his "simultaneity claims are just too conclusory to survive."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"); *Swarts*, 689 F. Supp. 3d at 746. Plaintiff's limited and generic allegations about interception being "concurrent" or interception "in transit" without more are "too conclusory to survive." *Keurig Green Mountain*, 674 F. Supp. 3d at 758; *see Gen Digital* 2024 WL 655986 at *4.

For all of the foregoing, and independently sufficient, reasons, Plaintiff did not sufficiently allege that Meta violated the second clause of Section 631(a).

### 2. Plaintiff Did Not Allege Meta Acted Willfully.

Even if the Court finds that Plaintiff sufficiently alleged that Meta intercepted contents of his communications while in transit, the second clause of Section 631(a) also requires that Meta's violation be "willful." Cal. Penal Code §631(a). As noted above, this same intent – willfulness – was required for Red Roof under the aiding and abetting clause of Section 631(a), and that required Plaintiff to plead that there was an intent to assist Meta in violating a duty or statute. Similarly, because willfulness is required here as well, Plaintiff is required to allege that Meta intended to violate some duty or the statute. Plaintiff failed to do so.

While Plaintiff's Complaint is replete with explanations about Meta and its Pixel product (*e.g.*, Compl. at ¶¶29-50), Plaintiff never alleges any *facts* to support a conclusion that Meta acted willfully when it set up the Pixel, or that it intended to breach a duty or violate Section 631(a). Absent any such factual allegations, Plaintiff

has failed to plead Meta acted willfully and he has not pled a violation of Section 631(a)'s second clause.

## III. PLAINTIFF CONSENTED TO THE DISCLOSURE

### A. The Federal Rule of Evidence 201 Standard.

Defendants make a Rule 201 of the Federal Rules of Evidence request for the Court to take judicial notice of certain exhibits – specifically the Red Roof Privacy Policy, the Meta Privacy Policy, the Meta Cookie Policy, and the Meta Business Tools Terms – that are verified and attached to this Motion. A court "may take judicial notice on its own" or "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c) (emphasis added). "In general, websites and their contents may be judicially noticed." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 142 (N.D. Cal. Apr. 7, 2020). These documents show that Plaintiff Ferriz authorized the data sharing of which he now complains, and his CIPA claim will fail for this additional reason.

In ruling on this Rule 12 motion, the Court may look beyond the complaint to "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) ("a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'").

All of these factors are met here. Plaintiff specifically references his Facebook account, and directly cites to numerous of Meta's policies, including its "Privacy Center." (Compl. at ¶¶ 45-48, 56, 58, 61, and notes 4, 5, 29-34, 36-37, 42.) Additionally, Plaintiff asserts that he utilized Red Roof's website, which includes a

Privacy Policy, but claims that nothing on the website informed him about the sharing of information with Meta. (*E.g.*, *id.* at ¶88.). Second, the central issue in this case is the Website and its alleged data collection practices, which are disclosed in the Privacy Policy. And third, the attached copies are authenticated by attorney declaration attesting to their authenticity and providing the URL and date accessed. *E.g.*, *Heiting*, 2024 WL 1626114 at *3 (considering outside documents on a motion to dismiss, noting that "it is sufficient under Rule 901 of the Federal Rules of Evidence for Defense Counsel to authenticate the document by attesting to the authenticity and providing the URL along with the date accessed").

**B. The Policies Establish Plaintiff's Consent**

First, by utilizing Red Roof's website, Plaintiff accepted Red Roof's online disclosures regarding its data collection and disclosure practices about website visitors and those who book hotel stays on the site. Red Roof's Privacy Policy is easily accessible throughout Red Roof's website, including the screenshot Plaintiff images in his Complaint (although being careful to not include the relevant link). (Compl. at Figures 1-5; Decl. ¶ 3 at Ex. 1.) The Privacy Policy reveals that Red Roof disclosed, among other things, that it may collect "**information about how you use these services**." (Decl., ¶ 3 at Ex. 1 at Section 2(c) (emphasis added)). Red Roof also discloses that it may collect a user's "Personal Information." (*Id.* at 2(b).) Additionally, Red Roof's Privacy Policy states that it "may partner with third parties [such as Meta] that have the capability to collect or receive information about actions Consumers take on: (a) the Site . . . ***through use of cookies, pixel tags and other storage technologies***." (*See id*. at 3(d).) Accordingly, Red Roof's Privacy Policy clearly states that the complained of technology (*see* Compl. ¶¶ 4, 52, 62, 83) may be used to collect and share information with Meta. By using the Red Roof site (*id.* at ¶7), Plaintiff consented to these practices. This holds true even if the Plaintiff did book a stay at a Red Roof hotel from its website, which is not expressly alleged, but

appears to be implied.

Similarly, Meta's terms and policies also illustrate that Plaintiff knew about and consented to the alleged sharing of his information. Plaintiff admits that he has a Facebook account. (*Id.* at ¶6.) When signing up for a Facebook account, users, like Plaintiff, agree to Meta's terms and policies. Meta's Terms of Service, Cookie Policy, and Privacy Policy all show that Plaintiff consented to the alleged sharing of information he complains about here. These terms and policies indicate that Meta may receive ***information from cookies and similar technologies*** (such as the Meta Pixel), information about his website browsing activity, and data related to his use of products and services from partners (such as Red Roof). (Decl. ¶¶4-6 at Ex. 2-4.) Meta also outlines how it may use this information. (*Id.*) By creating a Facebook account and agreeing to these terms, Plaintiff himself consented to the very information practices he now challenges in his Complaint.

Because Plaintiff consented to the very alleged interception he now complains about, his claim under CIPA Section 631(a) should be dismissed with prejudice.

* * * * *

For all of the foregoing reasons in Sections I and II above, Plaintiff's claim under CIPA Section 631(a) should be dismissed with prejudice.

## IV. PLAINTIFF'S RIGHT TO PRIVACY CLAIM MUST BE DISMISSED

Based on the same allegations, Plaintiff also seeks to bring a claim for the violation of his right to privacy under the California Constitution. This claim, too, should also be dismissed.

To show a violation of the right to privacy under the California Constitution, Plaintiff Ferriz must allege: (1) a legally protected privacy interest, (2) his reasonable expectation of privacy given the circumstances, and (3) conduct by Red Roof that "amounts to a serious, egregious invasion of the protected privacy interest." *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp.3d 968, 985 (N.D. Cal. 2014), *citing*

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35-37 (1994); *see Shapiro v. AT&T Mobility*, 2020 WL 4341778, *1 (C.D. Cal. May 18, 2020). The first and third elements are lacking, and Ferriz's claim fails.

### A. Plaintiff Does Not Plead a Legally Protected Privacy Interest.

#### 1. The Information Plaintiff Alleges Was Shared Is Not Subject To A Legally Protected Privacy Interest In And Of Itself.

Even looking at Plaintiff's general allegations,[3] the information Plaintiff claims was improperly shared with Meta is alleged to be a user's Facebook ID, browser information, and web page parameters. (Compl. at ¶¶52-53, 62.) Such information, which reveals no sensitive or confidential personal information, does not implicate any privacy interest. Situations in which a privacy interest has been recognized include performing bodily functions while being watched by a monitor (*Hill*, 7 Cal. 4th 1), photos of a decapitated accident victim (*Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 874 (4th Dist. 2010), as modified on denial of reh'g (Mar. 1, 2010)), and customer "purchase, return, and exchange history . . . unique identification information contained on or within a consumer's driver's license, government-issued ID card, or passport, e.g., the consumer's name, date of birth, race, sex, photograph, complete street address, and zip code . . ." among other information. *Hayden v. Retail Eqation, Inc.*, 2022 WL 2254461, *6-7 (C.D. Cal. May 4, 2022), *reconsidered on other grounds* 2022 WL 3137446 (C.D. Cal. July 22, 2022). The information Plaintiff alleges was shared with Meta simply does not meet the "high bar" required by the California Constitution. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The California Constitution . . . set[s] a high bar for an invasion of privacy claim.")

---

[3] As noted above, Plaintiff never alleges what of *his* information was allegedly shared with Meta.

**2. Cal Civ. Code §53.5 Does Not Provide a Legally Protectable Privacy Interest.**

Plaintiff appears to rely on Cal. Civil Code §53.5, which provides for the confidentiality of defined "guest records," to establish the requisite privacy interest. (*E.g.*, Compl. at ¶91.) That argument fails for two reasons.

First, for information to qualify as a "Guest record" under §53.5, the information must identify a "guest, boarder, occupant, lodger, customer, or invitee." Cal. Civil Code §53.5(c). Here, Plaintiff does not allege that Meta received any information indicating that Plaintiff – or anyone – actually booked a room. While Plaintiff makes allegations about Red Roof's website and the booking process, he does not allege any facts showing that Meta ever received any information that he or anyone else made a booking and became a "guest, boarder, occupant, lodger, customer, or invitee." Absent the information identifying him as such, §53.5 does not apply.

Second, even assuming Plaintiff qualifies as a "guest," Cal. Civil Code §53.5 provides that it does not, and should not be used to, preclude a private business from sharing records with third-party service providers for business-related services:

> This section shall not be construed to prevent a private business . . . from providing business records to a third-party service provider that the private business contracts with for business-related services.

Cal. Civ. Code § 53.5(i). As Plaintiff alleges, Meta's Pixel is subject to a contract – Meta Business Tools Terms. (Compl. at n. 29, including relevant web address.) These terms provide that Meta will not share information it receives through the "Business Tools" (including the Meta Pixel) unless Meta is told it is allowed to do so. (*See* Decl., ¶7 at Ex. 5 at Section 1.n., located at https://m.facebook.com/legal/businesstech (cited in Compl. at n. 29).)[4] Given that

---

[4] As noted previously, the Court can take judicial notice of this document that appears on Meta's website. Additionally, because this document is referenced, repeatedly in Plaintiff's Complaint, the issue of sharing information and how it is used is central to his claim, and no party can object to the document's authenticity, the Court can consider the full Meta Business Tools Terms. *Daniels-Hall*, 629 F.3d at 998.

Meta cannot share data with third parties except as allowed under the relevant contract – *i.e.*, the Business Tools Terms – it qualifies as a "third-party service provider" under Cal. Civ. Code § 53.5(f). Cal. Civ. Code § 53.5(i) therefore precludes the use of the statute to prevent Red Roof from sharing business records – such as the information Plaintiff claims was shared – with a third-party service provider – such as Meta. Allowing Plaintiff to rely on Cal. Civ. Code § 53.5 to deem the shared information subject to a privacy interest such that it would be improper for Red Roof to share it, would directly contravene the statute and should not be allowed.

### B. No Egregious Invasion of the Privacy Interest is Alleged, Or Could Have Occurred.

Even assuming Plaintiff could establish a legally protectible privacy interest, he fails to allege that the sharing of the information was an "egregious" invasion of that interest. In *Gen Digital*, the plaintiff also brought a claim for invasion of privacy under the California Constitution, alleging that "Defendant's actions were highly offensive to all reasonable persons," and that "Defendant has acted with oppression, fraud, or malice." 2024 WL 655986 at *5. However, as the court in *Gen Digital* noted, the plaintiff failed to identify exactly what acts were highly offensive, oppressive, fraudulent, or malicious, or provide any facts about those acts. As a result, the court dismissed the invasion of privacy claim. *Id.* Here, too, Ferriz never alleges any facts explaining what was "serious," what the "nature, scope, [or] impact" of the actions was, or what actions were "an egregious breach of societal norms" or how so. Absent such facts, Plaintiff's claim for invasion of privacy should be dismissed.

Moreover, a business' sharing of common and basic digital information – such as a name or identifier, browsing habits, search queries, preferences, etc. – with third parties is not an egregious violation of societal norms. *See In re Google Privacy Policy*, 58 F. Supp. 3d at 974 (finding no egregious violation for sharing "personal

identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information," and stating "Courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms."); *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, *7 (C.D. Cal. May 4, 2022) ("Courts have recognized that businesses' collection and disclosure of personal information for business purposes do not constitute a violation of social norms but are rather "routine commercial behavior."), *citing, Folgestrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (obtained customer's address to mail advertisements); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of LinkedIn ID and URL of page viewed, "which in the aggregate discloses a user's browsing history among LinkedIn profiles" not invasion of privacy).

This is not surprising since even more serious disclosures of information have been held ***not*** to be "egregious." *E.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) aff'd, 380 Fed. Appx. 689 (9th Cir. 2010) (**theft** of laptop containing, among other things, job applicants' **social security numbers**); *In re Iphone Application Litig.*, 844 F. Supp 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of users' personal data, which was allegedly gathered surreptitiously, including **address, gender, age, and zip code**, to third parties was not an egregious breach of privacy).

Thus, even if Plaintiff were to try to plead additional facts, the sharing of the very limited, basic, digital information claimed here is not an "egregious" violation of any privacy interest. Plaintiff's invasion of privacy claim should be dismissed with prejudice.

## CONCLUSION

Plaintiff has not met his burden to demonstrate he has Article III standing to

pursue his state claims in federal court. And, while Plaintiff presents numerous conclusions, he has simply failed to plead any *facts* to state an actionable claim under either CIPA or the California state constitution. For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Dated: December 16, 2024 CLARK HILL LLP

By: */s/ Myriah Jaworski*
Myriah Jaworski
Ali Bloom
Peter Berk

Attorneys for Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC