**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARTIN FERRIZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC,

Defendants.

Case No. 2:24-cv-8622-SVW-AJRx

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Judge: Hon. Stephen V. Wilson

Hearing: February 3, 2025
Time: 1:30 p.m.
Ctrm: 10A

# TABLE OF CONTENTS


PAGE(S)

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 4

I. PLAINTIFF ADEQUATELY PLEADS AN INJURY .................................... 4

II. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ................................. 9

A. Plaintiff Sufficiently Alleges that Meta Violated the Second Prong of CIPA § 631(a). ........................................................ 9

1. Meta Intercepted the "Contents" of Plaintiff's Communications. ............................................................... 9

2. Plaintiff Alleges His Communications Were Intercepted "In Transit." ........................................................ 12

3. Meta Intended To Intercept Plaintiff's Communications ............................................................ 13

B. Plaintiff Sufficiently Alleges That Defendants Aided Meta's Violation In Violation Of The Fourth Prong of CIPA § 631(a). ............................................................ 14

III. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS GUEST RECORD INFORMATION .................................................. 15

IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ............................................................................ 18

CONCLUSION ......................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES


*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
2016 WL 6601662 (C.D. Cal. Feb. 3, 2016) ... 12

*Armstrong v. Allied Ins. Co.*,
2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) ... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3, 4

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ... 18

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ... 10, 16

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ... 9, 13

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ... 8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 16

*Carlsen v. Gamestop, Inc.*,
833 F.3d 903, (8th Cir. 2016) ... 7

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ... 16

*Coulter-Owens v. Time Inc.*,
695 F. App'x 117 (6th Cir. 2017) ... 7

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ... 6, 13

*DiNaples v. MRS Bro, LLC*,
934 F.3d 275 (3d Cir. 2019) ... 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 6

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 11, 21

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 18

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) .......... 15

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 15

*Foglestrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (2011) .......... 21

*Gaczyk v. West Pub. Co.*,
660 F.3d 275 (7th Cir. 2011) .......... 7

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .......... 7

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 4

*Hayden v. Retail Equation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 4, 2022) .......... 21

*Heglund v. Aitkin County*,
871 F.3d 572 (8th Cir. 2017) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 13, 15

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) .......... 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 18

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. Apr. 29, 2022) .......... 8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 10, 11

*In re Facebook, Inc., Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 6

*In re Google, Inc. Privacy Pol'y Litig..*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 21

*In re iPhone Application Litig.*,
844 F.Supp.2d 1040 (N.D. Cal. Jun. 12, 2012) .......... 21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 9, 10, 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. Mar. 2, 2017) .......... 19

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10, 11

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 16

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 6

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .......... 6

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 17

*Licea v. American Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .......... 6, 13

*Licea v. Cinmar, LLC*,
2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) .......... 6

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 6, 8

*Long v. Provide Com., Inc.*,
245 Cal.App.4th 855 (2016) ........ 16

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 21

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........ 5

*Mata v. Zillow Group, Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 14

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 15

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) ........ 19

*Persinger v. Southwest Credit Systems, L.P.*,
20 F.4th 1184 (7th Cir. 2021) ........ 7

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. May 9, 2024) ........ 14

*Raffin v. Medicredit, Inc.*,
2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) ........ 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 10

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 15

*Ruiz v. Gap, Inc.*,
540 F.Supp.2d 1121 (N.D. Cal. Mar. 24, 2008) ........ 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4, 5

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .......... 4

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 13

*Taylor v. Acxiom Corp.*,
612 F.3d 325 (5th Cir. 2010) .......... 8

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) .......... 4, 5, 6, 7

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 15

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 13, 18

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 15

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. Aug. 14, 2023) .......... 13

*Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*,
529 U.S. 765 (2000) .......... 4

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 6

**STATUTES**

Cal. Civil Code § 53.5 .......... passim

Cal. Penal Code § 631 .......... 1, 9, 14

**RULES**

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

**OTHER AUTHORITIES**

Restatement (Second) Of Contracts § 19 (Am. L. Inst. 2002) .................................. 16

Restatement (Second) of Torts § 652B (1979) ......................................................... 5

## INTRODUCTION

Plaintiff, Martin Ferriz ("Plaintiff"), individually and as a class representative for all others similarly situated, seeks to represent a putative class of individuals who, like him, booked hotel stays on Defendants' Red Roof Inns, Inc. and Red Roof Franchising, LLC (collectively, "Red Roof" or "Defendants") website, www.redroof.com (the "Website") and had their "guest record" information disclosed to Meta, Inc. ("Meta" or "Facebook"). Plaintiff asserts two counts, one for violation of the California Invasion of Privacy Act, Cal. Penal Code § 631 (the "CIPA") and one for invasion of privacy under the California Constitution. Class Action Complaint (ECF No. 1) ("Compl."), ¶¶ 75-93.

The State of California recognizes the importance of maintaining the privacy of consumers' private travel itineraries. By enacting § 53.5 of the California Civil Code, the state legislature ensured that its citizens would have greater protections regarding such sensitive information. *Id.*, ¶ 21. Specifically, Cal. Civil. Code § 53.5(a) provides that owners and/or operators of hotels and lodginghouses "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civil Code § 53.5(c) defines a "guest record" as "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number[.]" While a hotel may disclose such information to its third-party service providers, it may only do so for the limited purpose of providing business-related services. Cal. Civil Code § 53.5(i). Indeed, in order to qualify as a "third-party service provider" under the statute, the entity must have "no independent right to use or share the data beyond the terms of the contract." Cal. Civil Code § 53.5(f).

Plaintiff is a citizen of California who has booked multiple overnight reservations through Defendants' Website. Compl., ¶¶ 5-7. When making reservations on the Website, Plaintiff was unaware that Defendants would share the private details of his stays to unknown third parties. *Id.*, ¶ 7. Indeed, as an operator of hotels in the State of California, Defendants had a duty to make sure such "guest record" information was safeguarded and not disclosed. *See* Cal. Civil Code § 53.5; Compl., ¶ 24. Despite this duty, Defendants assisted Meta, Inc. ("Meta" or "Facebook") with intercepting its patrons' private "guest record" information for its own financial benefit, as well as Meta's. Specifically, Defendants assisted Meta in intercepting its customers' check-in and check-out dates, the city of their stay, the name of the hotel, and their Facebook ID. Compl., Figure 5. Meta was then able to use consumers' Facebook ID, which is a unique identifying number, to identify its account holders by name. *Id.*, ¶ 53. Meta does not qualify as a third-party service provider, as defined by Cal. Civil Code § 53.5(f), because it uses the private information disclosed by Defendants for its own targeted advertising services. *See, e.g.,* Compl., ¶ 49 ("Thus, Meta uses the information it wiretaps for purposes other than simply providing a recording to its customers, including but not limited to its own contact information matching; measurement and analytics services; ad targeting; commercial and transactional messages; ad delivery improvement; facture and content personalization; and product improvement, provision, and securement."). By assisting Meta with intercepting this protected information, Defendants violated the CIPA and invaded Plaintiff's and putative class members right to privacy.

Knowing they have no real defense, Defendants resort to mischaracterizing Plaintiff's claims or simply ignoring portions not helpful to their argument. Plaintiff has detailed at length the ways in which Defendants have assisted Meta in intercepting its customer's confidential "guest record" information. *See* Compl., ¶¶ 29-65. Moreover, contrary to Defendants' assertions, Plaintiff has alleged the specific details of his interactions with Defendants and its Website, including that he

"has booked several overnight stays at Red Roof locations," "in or around February 2024," "at Defendants' San Dimas location." *Id.*, ¶ 7. Plaintiff has also alleged that "Defendants assisted Meta with intercepting Plaintiff's communications, including those that contained personally identifiable information, and related 'guest records.'" *Id.*, ¶ 8. All of this was done "without Plaintiff's knowledge, consent, or express written authorization." *Id.* At the pleading stage, nothing more is required. Defendants attempt to establish consent for the disclosures at issue by relying on vague and generic privacy policies and terms of use. *See* Motion to Dismiss Class Action Complaint at 19-20. ECF No. 22 ("Motion"). But Defendants fail to provide any evidence that Plaintiff was provided constructive notice of such policies. Because he was not. In any event, such policies fail to disclose that confidential "guest record" information will be shared with and used by third parties. Defendants' conduct here does not amount to a bare statutory violation. The California legislature has recognized the important privacy interests at stake concerning the disclosure of "guest record" information. This Court should too.

Accordingly, the Court should deny Defendants' motion in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF ADEQUATELY PLEADS AN INJURY

Defendants argue Plaintiff lacks standing for claims brought under the CIPA because "[s]imply alleging a violation of a statute is insufficient to confer Article III standing." Motion at 5. However, such an assertion mischaracterizes the nature of Plaintiff's claims.

"Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*, 529 U.S. 765, 774 (2000) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998)). To satisfy Article III, "plaintiffs must demonstrate, among other things, that they have suffered a concrete injury." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021). To be concrete, an injury "must actually exist"; that is, it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotations omitted). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC*, 141 S.Ct. at 2204. Although less obvious, "[v]arious intangible harms can also be concrete." *Id*. An intangible harm is concrete when it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.

Plaintiff alleges that Meta allows companies, like Defendants, "to integrate software into their websites…that tracks user activity, like the buttons they click or the forms they complete." Compl., ¶ 37. Plaintiff provides examples of the information consumers provide when booking a hotel reservation on Defendants' Website. *See id.*, Figure 2. Plaintiff further alleges that "Defendants assisted Meta with intercepting Plaintiff's communications, including those that contained personally identifiable information, and related 'guest records.'" *Id.*, ¶ 8. And to leave no room for confusion, Plaintiff includes examples of network traffic to Meta when a consumer is completing the booking process. *Id.*, Figure 5. Moreover, Plaintiff specifically alleges that Defendants "violated CIPA by aiding and permitting third parties (i.e. Meta) to receive its guests' online communications through the Website without their consent." *Id.*, ¶ 84. Such a disclosure was not merely a technical statutory violation, but also a serious invasion of privacy. *See Id.*, ¶¶ 3, 92.

Plaintiff has standing to bring his wiretapping claims because his injury bears a close relationship to intrusion upon seclusion. *See TransUnion LLC*, 594 U.S. 413, 425 (2021). The prevailing view is that a wiretap, by itself, constitutes a concrete injury. *See, e.g.,* Restatement (Second) of Torts § 652B, cmt. B (listing examples of intrusion upon seclusion, including "tapping…phone lines" and "opening…private and personal mail"); *Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016) ("Following *Spokeo*, district courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute."). More recently, some courts have held that a wiretap alone is insufficient, requiring that the communications also contain private or personal information. *See, e.g., Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("'Eavesdropping' on communications that do not involve personal information, personally identifiable information or information over which a party has no

reasonable expectation of privacy does not amount to a concrete injury."); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same).

Under either standard, however, Plaintiff still establishes a concrete injury by alleging that Defendants disclosed his "guest record" information, which is protected information under California law. *See, e.g.,* Compl., ¶ 9 ("Defendants breached their duties of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and sensitive trip details (i.e. 'guest records' under Cal. Civil Code § 53.5.")). Such information was disclosed "without Plaintiff's knowledge, consent, or express written authorization." *Id.*, ¶ 8. Taken together, under any standard, those allegations are enough to show concrete injury. *See, e.g., In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)[1] ("Violations of the right to privacy have long been actionable at common law."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (same).

*TransUnion* reinforces Plaintiff's position. In *TransUnion*, the Supreme Court considered whether two groups of class members bringing claims under the Fair Credit Reporting Act suffered a concrete injury in fact under Article III. *TransUnion*,

[1] *In re Facebook* is still good law after *TransUnion*. "Nothing about *TransUnion* guts the [] holding in *Facebook*, particularly because *Facebook* postdates *Spokeo*, the precedent on which *TransUnion* largely relied. Furthermore, the Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion*." *James v. Walt Disney Co.*, 2023 WL 7392285, at *5 (N.D. Cal. Nov. 8, 2023). As such, courts have continued to hold that plaintiffs who allege violations of state and federal wiretapping statutes have suffered a concrete harm sufficient for Article III standing. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *5-6 (N.D. Cal. Apr. 6, 2023); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *3 (S.D. Cal. Oct. 24, 2023); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *3 (C.D. Cal. Mar. 7, 2023); *Licea v. American Eagle Outfitters, Inc.*, 2023 WL 2469630, at *3 (C.D. Cal. Mar. 7, 2023).

141 S.Ct. at 2208-2213. The first group had a misleading credit report "disseminated to third parties." *Id.* at 2208-09. The second group merely had a misleading remark on their credit files that was not disseminated to a third party. *Id.* at 2209. The Supreme Court held that the first group suffered a concrete injury in fact, but not the second. *Id.* ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III."). It is therefore unsurprising that with near unanimity, circuit courts agree that Article III is satisfied by alleging "the unlawful disclosure of confidential information." *See, e.g.*, *DiNaples v. MRS Bro, LLC*, 934 F.3d 275, 281 (3d Cir. 2019); *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (holding that the plaintiffs possessed standing to bring their DPPA claim because the statute "is aimed squarely at the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone'") (internal quotations omitted); *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (holding that the plaintiff possessed standing to bring a claim under the Fair Credit Reporting Act because "[a]n unauthorized inquiry into a consumer's propensity-to-pay score is analogous to the unlawful inspection of one's mail, wallet, or bank account"); *Heglund v. Aitkin County*, 871 F.3d 572, 578 (8th Cir. 2017) (holding that the plaintiffs "have standing to bring their DPPA claim" because "[a]n individual's control of information concerning her person—the privacy interest the Heglunds claim here—was a cognizable interest at common law"); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (holding "the disclosure of [subscriber] information is a cognizable injury in fact for purposes of Article III standing."); *Carlsen v. Gamestop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (holding a plaintiff possessed standing to bring a claim under Minnesota's Consumer Fraud Act where defendant "systematically disclos[ed] Game Informer's users' PII…to third party Facebook and/or allowing Facebook to directly collect that information itself.") (internal quotations omitted); *Gaczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (holding plaintiffs had standing to sue because "[t]he DPPA protects

individuals from certain uses or disclosures of their personal information"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 n. 15 (5th Cir. 2010) (same).

The authority relied upon by Defendants in support of its position is telling. Indeed, *none* of the cases cited by Defendants concern the disclosure of *private* or *protected* information. *See Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023) (finding no injury where the plaintiff failed to allege that any personal or sensitive information was disclosed); *Lightoller*, 2023 WL 3963823, at *4 (same); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (same); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049 (N.D. Cal. Apr. 29, 2022) (same). Conversely, the information disclosed by Defendants here communicated specific facts regarding consumers' private travel details, disclosing when an individual would be away from their home (including departure and arrival dates), the specific location they would be traveling to, name of the hotel they would be staying in, and the number of adults and children they would be traveling with (collectively, "guest record" information). *See Id.*, Figure 5. Such information can be clearly seen in the network traffic between Defendants and other third parties like Meta. *Id*. Consumers maintain an expectation that their "guest record" information is not being disclosed to third parties. *See id.*, ¶ 3 ("Privacy is a crucial consideration when booking travel online, as it safeguards personal information from unauthorized access and misuse."). Moreover, this information is protected by California law. *See* Cal. Civ. Code § 53.5.

Defendants' argument that the information disclosed to Meta did not identify Plaintiff is equally unavailing. Plaintiff alleges at length the ways in which the Meta Tracking Pixel operates, including specifically how Meta links disclosed Facebook IDs with individuals' names. *See* Compl., ¶¶ 29-50. Plaintiff details how Meta was able to identify Plaintiff through the use of the "c_user cookie…which contained that user's unencrypted Facebook ID." *Id.*, ¶ 54. Similarly, Meta also utilizes the "fr cookie" and "_fbp c ookie" for the same purposes. *Id.*, ¶¶ 56, 58. Meta utilizes these

cookies to link "Facebook IDs and corresponding Facebook profiles." *Id.*, ¶ 63. Notably, a "guest record" under Cal. Civil Code 53.5(c) "includes *any record that identifies an individual guest*…including, *but not limited to*, their name…*or other unique identifying number*." (emphasis added). A Facebook ID is also considered "guest record" information under Cal. Civil Code 53.5(c) because it is a unique identifying number that can be used to identify an individual. Defendants "sent these identifiers alongside the event data" when consumers, like Plaintiff, booked reservations on its Website. *Id.*, ¶ 63. Plaintiff further alleges that he "has actively maintained a Facebook account with Meta at all relevant times prior to and after booking his stay through the Website." *Id.*, ¶ 6. And a consumer's Facebook profile, like Plaintiff's, contains personally identifying information, including "their first and last name along with their birthday and gender." *Id.*, ¶ 29. At the pleading stage, nothing more is required.

## II. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

### A. Plaintiff Sufficiently Alleges that Meta Violated the Second Prong of CIPA § 631(a).[2]

#### 1. <u>Meta Intercepted the "Contents" of Plaintiff's Communications.</u>

Defendants argue that Plaintiff's CIPA claim fails because he only alleges the interception of "record" information. That is wrong.

CIPA § 631(a) prohibits the unauthorized disclosure of the contents of communications. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). "Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act, … and [u]nder the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire*

[2] Plaintiff does not bring claims under the first clause of CIPA § 631(a).

*& Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked," *see In re Meta* Pixel, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7, 2023); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Here, Plaintiff alleges that the contents of his communications were intercepted by Meta. For example, when consumers, including Plaintiff, entered their "guest record" information (including the dates and destination of their trip) through Defendants' Website, Defendants assisted Meta in intercepting the contents of those communications. Compl., Figure 2, Figure 5. Under California law, such information is the "content" of the communication, as opposed to mere record information, because it is the "intended message of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1. Each of these interceptions is tethered to a unique Facebook ID, which Meta uses to identify its account holders. Defendants' argument that such information is merely "record" information is contrary to California law.

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) does not compel a different result. In *Zynga*, the URLs "at issue [] include[d] only basic identification and address information, not a search term or similar communication

made by the user, and therefore d[id] not constitute the contents of a communication." *Zynga*, 750 F.3d at 1109. In its analysis, the Ninth Circuit contrasted this information with "a Google search URL [that] not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google." *Id.* at 1108 (citing *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008). Here, as discussed above, Plaintiff's communications are more akin to the "Google search URL" described in *Zynga*.

Defendants also attempt to rely on *Gen Digital* to advance the argument that Plaintiff failed to allege the specific information intercepted by Meta. Motion at 14. This argument ignores the factual allegations of Plaintiff's Complaint. Plaintiff, like all members of the putative class, "actively maintained a Facebook account with Meta at all times relevant prior to and after booking his stay through the Website." Compl., ¶ 6. In order to book his reservation, Plaintiff was required to "input[] a destination and the dates of his stay[.]" *Id.*, ¶ 7. By assisting Meta with intercepting such information, "Defendants breached their duties of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information [e.g., his Facebook ID] and sensitive trip details (i.e. 'guest records']" in violation of the CIPA. *Id.*, ¶ 9. Plaintiff even provides the specific details of at least one of his reservations made through the Website. *Id.*, ¶ 7 ("For example, in or around February 2024, Plaintiff visited the Website to book a stay at Defendants' San Dimas location."). This is in stark contrast to *Gen Digital*, where the plaintiff "fail[ed] to allege specific facts about what was intercepted and when or how the interception took place." *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024).

Apparently realizing the weakness of these arguments, Defendants attempt to make improper attacks on the credibility of the evidence presented in Plaintiff's Complaint, allegations which at this stage must be accepted as true. Motion at 15. Defendants attack Figure 5 in Plaintiff's Complaint, a screenshot of Defendants'

website, meant to provide a visual illustration of the data fields intercepted by the Meta Tracking Pixel when a customer books a stay on Defendants' website. Compl. at 15-16. It is merely a visual aid. Defendants argue that "Figure 5 does not indicate the date on which it was taken or any other information about the circumstances of its creation." *Id.* This argument is a red herring, as Defendants fail to put forth *any* authority to support of their position. That is for good reason. The visual aid depicting the data interception in Figure 5 is an accurate representation of what is occurring on Defendants' website. Defendants' argument on this point is without merit. *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 2016 WL 6601662, at *7 (C.D. Cal. Feb. 3, 2016) ("[T]he factual issues Defendants raise are not appropriate for resolution at this juncture.").

### 2. <u>Plaintiff Alleges His Communications Were Intercepted "In Transit."</u>

Defendants argue "Plaintiff presents no factual allegations to support" his claim that his communications were intercepted "in transit." Motion at 16. Contrary to Defendants' contention, Plaintiff has alleged that Meta intercepted his communications in transit:

> Once the individual enters in the information [to book a stay on the Website], the individual's browser sends a GET request to Red Roof's server requesting that server to load the particular webpage. Because Red Roof utilizes the Meta Tracking Pixel, Meta's embedded code, written in JavaScript, sends secret instructions back to the individual's browser or mobile phone, without alerting the individual that is happening. Meta causes the browser to secretly and simultaneously duplicate the communication with Red Roof, transmitting it to Meta's servers alongside additional information that transcribes the communication's content and the individual's identity. This entire process occurs within milliseconds.
>
> In other words, when a user communicates with Red Roof's Website, those communications are simultaneously and contemporaneously duplicated and sent to Meta at the same time they are being sent to Red

> Roof. Thus, Meta's interception of these communications occurs 'in transit.'

Compl., ¶¶ 38-39. These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. No additional allegations are required. *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F.Supp.3d 969, 1078-79 (C.D. Cal. Aug. 14, 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *D'Angelo*, 2023 WL 7006793, at *8; *Goodyear Tire & Rubber Co.*, 654 F.Supp.3d at 1027.

Defendants' reliance on *Gen Digital* is misplaced for the same reasons discussed, *supra*. Defendants' remaining authority fares no better. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (finding plaintiff's allegations were insufficient because she did "little more than restate the pleading requirement of real time interception."); *Licea*, 659 F. Supp. 3d at 1084–85 (same); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (same).

### 3. Meta Intended To Intercept Plaintiff's Communications

Defendants argue Plaintiff's CIPA claim fails because he fails to "allege that Meta intended to violate some duty or the statute." Motion at 17. That is wrong.

Under the CIPA, "[t]he second clause creates a violation where a person 'willfully and without the consent of all parties to the communication, or in any unauthorized manner reads or attempts to read, or to learn the contents or meaning of any message, report, or communication[.]'" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1013 (C.D. Cal. 2023). Therefore, in order to establish Meta's culpability, Plaintiff need not allege that Meta willfully violated the statute, but rather, that Meta willfully intercepted the communications at issue. As discussed, *supra*, Plaintiff has met his burden. *See also In re Meta Pixel Healthcare Litigation*,

647 F. Supp. 3d at 795 ("[T]he Pixel is 'designed for the very purpose of intercepting communications on third-party websites by surreptitiously and contemporaneously redirecting these communications to Meta. Plaintiffs have put forth evidence that Meta receives this information through the Pixel. Meta does not dispute that the intentional or interception elements are met.") (internal citations omitted).

### B. Plaintiff Sufficiently Alleges That Defendants Aided Meta's Violation In Violation Of The Fourth Prong of CIPA § 631(a).

Defendants argue that Plaintiff fails to state a claim under Section 631(a) because "[h]e does not allege that [Defendants] knew Meta's actions were an alleged breach of duty or violated a statute, or that [Defendants] agreed to assist Meta in a knowing breach of that duty, or otherwise intended that it be so." Motion at 12. That is wrong.

California law requires that hotels or other similar accommodations keep "guest record" information confidential. *See* Cal. Civil Code § 53.5(a). Despite the duty it owed to Plaintiff and putative class members, Defendants "integrated the code [i.e. the Meta Tracking Pixel] that allowed [Meta] to wiretap [the] communications" of its customers when they booked travel accommodations through the Website. Compl., ¶ 14. These communications included the private details of its customers' travel itineraries, such as the dates of arrival and departure, the city they are traveling to, the name of the hotel they are staying at, and the number of adults and children in their party. *See id.*, Figure 5. Courts consistently find a violation of clause four of the CIPA when a defendant aids Meta in intercepting protected information. *See, e.g., R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. May 9, 2024) (Denying motion to dismiss aiding violation of the CIPA when "Plaintiffs allege that Defendant intentionally utilized tracking technologies to collect, use, and distribute Plaintiff's sensitive information to third parties like Facebook."); *Mata v. Zillow Group, Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024) (collecting cases). This is in stark contrast to the authority relied upon by Red Roof where the plaintiffs

did not allege that any protected information was unlawfully disclosed. *See Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293, at *1 (S.D. Cal. Aug. 5, 2024) (vague allegations concerning chat feature on a company's website); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (same); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1108 (S.D. Cal. 2024) (same); *Heiting*, 709 F. Supp. 3d at 1019 (same).

## III. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS GUEST RECORD INFORMATION

Defendants argue Plaintiff's CIPA claim should be dismissed because he "consented to the very alleged interception he now complains about[.]" Motion at 20. That is wrong.

As a preliminary matter, what a reasonable consumer would believe if they were on notice of the privacy statements at issue cannot be determined at this stage. *See, e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ("Determination of whether actual consent was given

depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta.”).

Additionally, the mere existence of privacy policies says nothing about whether Plaintiff is bound by the terms contained therein. Rather than assume assent, it is Defendants' burden to show notice of and assent to be bound. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (“[u]nder California law and generally applicable principles of contract law, the burden is on [Defendant] as the party seeking [enforcement of the contract] to show that it provided **notice of** … and that there was **mutual assent to** the contractual agreement[s].”) (emphasis added); *Cody v. Ring LLC*, 2024 WL 735667, at *4 (N.D. Cal. Feb. 22, 2024) (“Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA.”); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) (“The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.”) (cleaned up); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (same); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) (same).

Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) (“The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.”); *Long v. Provide Com., Inc.*, 245 Cal.App.4th 855 (2016). Under California law, “an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.” *Long*, 200 Cal. Rptr. 3d at 122 (citation omitted). Courts

must evaluate "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Defendants only offer the conclusory assertion that "by utilizing Red Roof's website, Plaintiff accepted Red Roof's online disclosures regarding its data collection and disclosure practices about website visitors and those who book hotel stays on the site." Motion at 19. But Defendants have failed to include **any** proof whatsoever that – during Plaintiff's use of the Website – Plaintiff saw, let alone read and consented to the policies on which Defendants rely. Indeed, **there is no indication or manifestation of Plaintiff's assent** to the policies precisely because Defendants never requested Plaintiff's consent to the conduct at issue here. *See* Compl., ¶¶ 8, 80.

Even assuming, *arguendo*, that Plaintiff did assent to be bound by either Defendants' or Meta's privacy policy, there is at least a question of fact as to whether the policies did indeed disclose (and thus sufficed as consent for) the wiretapping. This is because Defendants' terms and policies are silent as to the *specific* disclosures alleged herein. For example, Defendants fail to cite a single provision in its privacy policy or terms of use that it shares hotel booking information with third parties, like Meta. *See, e.g.,* Motion at 19 (providing that Defendants generally collect "information about how you use these services."). Likewise, Meta's policies – on which Defendants also rely – provide that Meta does not use its tracking technologies to collect, share, or use information without prior authorization or consent. For example, Defendants only cite to provisions of Meta's policies that discuss the collection of information *generally*. *See, e.g., id.* ("The terms and policies indicate that Meta may receive information from cookies and similar technologies."). However, this still fails to establish that Meta *specifically* collects and/or discloses hotel booking information. This is a crucial distinction, as such information is protected by California law. Cal. Civil Code § 53.5.

In short, Plaintiff's allegations show that Defendants did not disclose or receive consent for the wiretapping at issue here. Alternatively, and at the very least, Plaintiff's allegations raise questions of fact concerning the same. That is sufficient at this stage. *See*, *e.g.*, *Valenzuela*, 674 F. Supp. 3d at 756-57 ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage.") (cleaned up); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (finding allegations that "Plaintiff's Complaint states that she 'did not give consent—written or otherwise—to Defendant to collect voiceprints' and that she was enrolled in the MyVoice program as early as 2017" sufficient at the pleadings).

## IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendants argue Plaintiff fails to state a claim for invasion of privacy because he does not allege "a legally protected privacy interest" and the "conduct by Red Roof" does not amount "to a serious, egregious invasion of the protected privacy interest." Motion at 20 (internal citations omitted). Defendants are wrong on both counts.

To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege, "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014). In California, an individual has a legally protected privacy interest in "precluding the dissemination or misuse of sensitive and confidential information." *Hill v. Nat'l Collegiate Athletic*

*Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 856, 865 P.2d 633 (1994). This includes basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Although "routine collection of personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1233 (C.D. Cal. Mar. 2, 2017). Here, Plaintiff's legally protected privacy interest is bolstered by the fact that the information disclosed by Defendants is specifically protected from disclosure under Cal. Civil Code § 53.5. California law mandates that "guest record" information is confidential. Indeed, Cal. Civil Code § 53.5(a) provides that an "owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations[] … shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." *See also* Cal. Civil Code § 53.5(c) ("'Guest record' for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee[.]"). Cal. Civil Code § 53.5 was borne out of the State Legislature's concerns that

> [p]rotecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.
>
> Therefore, it is the intent of the Legislature to further Californian's right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended purposes and not improperly disclosed.

Compl., ¶ 21.

Here, Plaintiff not only alleges the disclosure of PII, but also protected "guest record" information. Defendants' argument that Plaintiff "does not allege any facts showing that Meta ever received any information that he or anyone else made a booking and became a 'guest,'" ignores the allegations in Plaintiff's Complaint. *See* Compl., ¶ 7 ("While navigating the Website, Plaintiff inputted a destination and the dates of his stay to look for overnight accommodations. Plaintiff selected a room at Red Roof's San Simas location and began the checkout process with the understanding that his sensitive trip details would not be shared with third parties such as Meta."); *see also id.*, ¶ 52 ("For example, as alleged above, when a customer entered [the Website] and began booking their hotel, Defendants' transmitted information relating to the specific customer's trip to Meta."). By disclosing such information, Defendants committed a serious invasion of Plaintiff's and putative class members' protected privacy interest. *See* Compl., ¶ 3.

Defendants attempt to evade its legal obligations by arguing that California law allows for "a private business [to] shar[e] records with third-party service providers for business-related services." Motion at 22. But Defendants are not permitted to share this protected information with Meta because Meta is not a legitimate "third-party service provider." A "third-party service provider" is defined as "an entity contracted to provide services outlined in the contract *that has no independent right to use* or share *the data beyond the terms of the contract*." Cal. Civil Code § 53.5(f) (emphasis added). The Complaint details Meta's use of the communications at issue for its own, ill-defined and independent purposes. *See, e.g.,* Compl., ¶ 46 ("Meta also can and does connect all information it intercepts to analyze and generate reports regarding advertising campaigns, create custom audience sets that can be shared with other advertisers, and 'use your Event Data for ads delivery only after aggregating such Event Data with other data collected from other advertisers or otherwise collected on Meta Products."). As such, Meta is not a service provider under the statute.

Defendants attempt to liken the disclosures at issue here with a host of dissimilar cases, all of which are distinguishable from the present facts. *See In re Google, Inc. Privacy Pol'y Litig.*., 58 F. Supp. 3d 968, 973–74 (N.D. Cal. 2014) (no disclosure of information to third parties); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (plaintiffs failed to make a showing of what information was obtained by third parties); *Gen Digital*, 2024 WL 655986, at *4 (same); *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *7 (C.D. Cal. May 4, 2022) (no disclosure of protected information); *Foglestrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) (same); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. Jun. 12, 2012) (same). The remaining authority relied upon by Defendants is also distinguishable because it involved the theft of laptop computers that contained sensitive information, which the court found was insufficient to establish "an egregious breach" of the social norms underlying the privacy right. *Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1128 (N.D. Cal. Mar. 24, 2008). Here, the disclosures at issue are not the result of negligent conduct, but rather, willful and intentional conduct by Defendants. Accordingly, Plaintiff has done more than enough to establish a legally protected privacy interest and an egregious invasion of that privacy interest by the Defendants.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: January 13, 2025

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512

E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

By: *_/s/ Sarah N. Westcot_*
Sarah N. Westcot