CLARK HILL LLP
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Ali Bloom (SBN 347446)
abloom@clarkhill.com
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

Attorneys for Defendants RED ROOF INNS, INC., and
RED ROOF FRANCHISING, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTIN FERRIZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

RED ROOF INNS, INC., AND RED ROOF FRANCHISING, LLC

Defendants.

Case No. 2:24-cv-8622 SVW-AJRx

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Judge: Stephen V. Wilson

Date: February 3, 2025
Time 1:30 p.m.
Ctrm: 10A

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

A. Ferriz Lacks Article III Standing. ..... 4

1. Ferriz Fails to Allege an Interaction with the Website that Could Allow his Information to be Intercepted by Meta. ..... 6

2. Ferriz Fail to Allege the Interception of "Guest Record" Information. ..... 7

B. Ferriz Fails to Adequately Allege a CIPA or Invasion of Privacy Claim. ..... 8

1. Ferriz Fails to Plausibly Allege "Aiding and Abetting" of a CIPA Violation by Red Roof. ..... 8

2. Ferriz Fails to Plausibly Allege an "In-Transit" Interception. ..... 10

3. Plaintiff Does Not Plead Adequate Facts Showing "Contents" of his Communication were "Intercepted." ..... 11

4. Plaintiff Cannot State a Claim for Invasion of Privacy under the California Constitution. ..... 12

C. Ferriz Consented to the Disclosure of his Information to Meta as a Matter of Law. ..... 14

D. Amendment Would be Futile because Ferriz's Complaint Fails as a Matter of Law. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 05, 2023) .......... 11

*Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023) .......... 1

*Cynthia Snyder v. G6 Hospitality LLC*, 5:24CV02423 (C.D. Cal. Nov. 13, 2024) .......... 1

*Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024, R. 36-3 Opp.) .......... 4, 5, 6

*Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997) .......... 14

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) .......... 8

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924-28 (N.D. Cal. 2024) .......... 4, 14

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994) .......... 13

*In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) .......... 13

*In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) .......... 13

*In re Lynette G.*, 54 Cal. App. 3d 1087, 1094 (1976) .......... 10

*In re Meagan R.*, 42 Cal. App. 4th 17, 22 (1996) .......... 10

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) .......... 7

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) .......... 12

*Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) .......... 11

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) .......... 12, 13

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) .......... 11

*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023) .......... 4, 5, 7

*People v. Beeman*, 35 Cal. 3d 547, 556 (1984) ........ 9

*People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997) ........ 9

*People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001) ........ 9

*People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) ........ 9

*Posadas v. Goodyear Tire & Rubber Co*., No. 23-CV-0402-L-DDL, 2024 WL 5114133, *4 (S.D. Cal. Dec. 13, 2024) ........ passim

*Rahman v. Marriott Int'l, Inc*., 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) ........ 8

*Reddy v. Litton Indus., Inc*., 912 F.2d 291, 296–97 (9th Cir.1990) ........ 14

*See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *8-9 (N.D. Cal. Dec. 1, 2022) ........ 14

*Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) ........ 10

*United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ........ 14

*Vanessa King v. FlixBus, Inc*., 5:24CV02108 (C.D. Cal. Oct. 02, 2024) ........ 1

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) ........ 2

*Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) ........ 12

**Statutes**

Cal. Civ. Code § 53.5 ........ 3

Cal. Civ. Code § 53.5(c) ........ 3, 7, 8

Cal. Pen. Code § 631(a)(4) ........ 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 4

Fed. R. Civ. P. 12(b)(1) ........ 4

## I. INTRODUCTION

Nothing in Plaintiff's Opposition to Red Roof Inc.'s Motion to Dismiss cures the Complaint's many defects.[1] Plaintiff Martin Ferriz's ("Ferriz") Complaint is devoid of factual allegations relating to *Ferriz*'s experience on Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC's (collectively, "Red Roof") website ("Website") or the pieces of information related to *Ferriz* that were allegedly intercepted. Indeed, the Complaint has only *three-paragraphs* that actually pertain to Ferriz. Compl. ¶¶ 6-9.

Rather, the Complaint's allegations are built upon Plaintiff's counsel's visit to Red Roof's Website some six months after Ferriz's alleged visit, and their "investigation" into the Meta Pixel and the Website's "systemic processes." Not only does Ferriz concede that these generalized allegations about Meta Pixel's "processes" are not specific to him, *see* Compl. ¶¶ 38, 52, but these allegations are nearly identical to those made in other complaints filed by the same counsel and against different defendants.[2] This form a generic pleading is exactly what this Court warned of in in *Byars v. Hot Topic, Inc*., No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023):

> *Twombly-Iqbal* pleading standards [can] be distilled to a single proposition: if a litigant pleads at such a high level of *generality that it is possible to copy and paste a complaint word-for-word against a new defendant . . . , then almost by definition he is pleading without the factual specificity necessary to state a claim for relief*.

(emphasis added).

---

[1] Plaintiff's complaint [ECF No. 1] is cited as "Complaint" or "Compl." Defendants' motion to dismiss [ECF No. 22] is cited as "Motion" or "Mot." Plaintiff's opposition brief [ECF No. 23] is cited as "Opposition" or "Opp."

[2] *See, e.g.*, *Vanessa King v. FlixBus, Inc*., 5:24CV02108 (C.D. Cal. Oct. 02, 2024), ECF No. 1; *Cynthia Snyder v. G6 Hospitality LLC*, 5:24CV02423 (C.D. Cal. Nov. 13, 2024), ECF No 1.

Indeed, he crux of Ferriz's claim appears to be that the interception of "guest records" by Meta while booking a hotel room on Red Roof's website could be an invasion of his privacy. *Id.* But Ferriz does not actually allege that he: (a) *while logged into* his Facebook account, (b) *completed* a booking on Red Roof's website. Mot. at 3-4, 7-8. He only alleges that he "*maintained* an account" and "*began* the checkout process" at some undefined time and on some undefined device. Compl. ¶ 6.[3] The failure to plead the bare minimum of an interaction with the Website that could plausibly lead to the interception of his protected information is insufficient to show a concrete harm for Article III standing, or to state a claim under CIPA.

The Opposition attempts to re-write Ferriz's allegation that he *historically made bookings* and *started a booking in February 2024* into an allegation that he completed a booking within the statute of limitations. But that is not what the Complaint says, and the Opposition entirely glosses over this failure.[4] Opp. at 3, 10-11. Even if this Court were to give Ferriz's allegations such deference that it transforms Ferriz's allegation into a *submission* of information *while logged into* his Facebook account, he does not clearly allege the exact pieces of information that were allegedly intercepted in a CIPA-violative manner. "The specifics of the shared information are necessary for the Court to determine whether Plaintiff has sufficiently asserted a [CIPA] claim for purposes of the present motion to dismiss . . . Plaintiff knows what information he shared and must plead [it]." *Posadas v. Goodyear Tire & Rubber Co*., No. 23-CV-0402-L-DDL, 2024 WL 5114133, *4 (S.D. Cal. Dec. 13, 2024) (dismissing plaintiffs online tracking CIPA claim on

---

[3] This also renders Ferriz an inadequate class representative because he is not even a member of his own putative class, which he defines as persons who "booked travel arrangements on [the Website]. Compl. ¶¶ 1, 66. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)("a class representative must be part of the class" (internal quotations and citations omitted)).

[4] Under Ferriz's own allegations, certain information is conveyed to Meta *only if* he is logged into Meta during his interaction with the Website. *See* Compl. ¶ 53-54.

standing and Rule 12(b)(6) grounds). To be sure, all of this information is within Ferriz's knowledge and possession: he knows whether he was logged into his Facebook account, the exact pieces of information he entered on the Website, whether he completed a booking, and the date on which he did so. *See Posadas*, 2024 WL 5114133, at *5 ("Plaintiff knows what information he shared and must plead enough facts to state a claim to relief that is plausible on its face (internal quotation omitted)).

Further, Ferriz alleges only that he input – "a destination and dates," Compl. ¶¶ 6, (but does not allege submission of this information). However, this generic information is neither "guest record, " under Cal. Civ. Code § 53.5, nor information in which Ferriz has any protectible privacy interest. "Guest record" information is information that "identifies an individual guest" *See* Cal. Civ. Code § 53.5(c)(such as "name,[5] social security number or other unique identifying number, [6] date of birth, location of birth, address, telephone number, driver's license number, other official form of identification"). A destination and dates of a hypothetical future booking (again, he does not allege he completed a booking) neither identifies him nor is any way private. Neither the potential dates and destination of travel, nor his own Facebook ID (again, not actually alleged) meet that requirement. *See* Opp. at 16-17.

In short, Ferriz makes "generalized and conclusory allegations that the [Meta Pixel] is capable of capturing private data" which are insufficient to assert that Plaintiff suffered a concrete injury as a result of [Defendant's] actions." *Posadas*,

---

[5] A "name" could also be a "guest record" information, Cal. Civ. Code § 53.5(c), but Ferriz does not allege entered that information on the Website. Compl. ¶ 7. Even if he did, Ferriz alleges that he had an active Meta account at the time of the alleged booking, Compl. ¶ 6, who would have already had his name.

[6] Ferriz alleges that a Facebook ID is "a unique and persistent identifier that Meta assigns to each user" for whom it has aggregated data. Compl. ¶ 53. Plaintiff alleges that the Website transmits this information to Meta if the user is "logged into Facebook." Compl. 54. Even if true, Ferriz does not allege he was "logged into Facebook" when he visited the Website. Compl. ¶ 6.

2024 WL 5114133, at *5. Because Ferriz fails to plausibly allege facts to show interactions with Red Roof's Website that would cause an *interception* of *protectible private information*, Ferriz both lacks a concrete Article III injury and fails to allege a plausible CIPA claim. *See* § II(A), *infra*. He also fails to allege a plausible CIPA or invasion of privacy claim for other more reasons. Ferriz fails to plausibility allege "aiding and abetting" by Red Roof or the "in transit" interception of "content" information. *See* § II(B), *infra*. Last, Red Roof's Website and Privacy Policy conspicuously disclosed to Ferriz the exact alleged disclosures to which of he now complains, which is not actionable as a matter of law under *Ghazizadeh v. Coursera, Inc*., 737 F. Supp. 3d 911, 924-28 (N.D. Cal. 2024). *Id*. a 6. *See* § II(C), *infra*.

The Court should dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) with prejudice. Further, amendment will not cure Ferriz's pleading defects, nor does he even argue that he can cure these deficiencies through amendment or request leave to amend. *See* § II(D), *infra*.

## II. ARGUMENT

### A. Ferriz Lacks Article III Standing.

Ferriz lacks Article III injury because he does not plead any injury whatsoever. *See* Mot. at 7-8. Even if Ferriz could rely on allegations of a CIPA violation to meet Article III's injury-in-fact requirement, he must still plead a plausible CIPA claim to demonstrate Article III standing. *See Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024, R. 36-3 Opp.)("[plaintiff lacks standing because her allegations are insufficient to state a claim under the CIPA provision she invokes"); *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023)("a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III").

The decisions in *Daghaly*, 2024 WL 5134350, *Mikulsky*, 682 F. Supp. 3d 855, and *Posadas*, 2024 WL 5114133, are illustrative. In *Daghaly*, 2024 WL 5134350, *1, the Ninth Circuit held that, to demonstrate Article III standing for a CIPA claim, "general allegations about how [a website] intercepts website visitors' communications, [] monitors their actions" and "transmit[s it] to third parties" combined with an allegation that a plaintiff "'visited' and 'accessed'" the website are insufficient to demonstrate an unauthorized interception. Rather, to satisfy CIPA (and demonstrate Article III standing), a plaintiff must allege facts showing that

> **she herself actually made any communications that could have been intercepted** once she had accessed the website. She [must] assert, for example, that **she made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it**.

*Id*. (emphasis added). *See also Mikulsky*, 682 F. Supp. 3d at 864 ("plaintiff must identify the specific personal information she disclosed that implicates a protectible privacy interest to survive a motion to dismiss" (citations and quotations omitted)).

Similarly, in *Posadas*, 2024 WL 5114133, at *5, the Court held that a plaintiff's general assertions regarding the capability of website tracking technology to intercept information on the website was "insufficient to assert a [CIPA claim]." Rather, "[t]he *specifics* of the shared information are necessary for the Court to determine whether Plaintiff has sufficiently asserted a [CIPA] claim." (emphasis added).

Thus, *Daghaly, Mikulsky, and Posadas* make clear that reliance on allegations of a CIPA violation to satisfy Article III does not excuse Ferriz of his obligation to plausibly allege *both:* (i) that he "made [a] communications that have been intercepted" and (ii) the "specific information he shared" and how that information "implicates a protectible privacy interest." As explained in Red Roof's Motion (Mot. at 4-8) and below, Ferriz fails both requirements. First, he fails to allege an interaction (*i.e*., communication) with the Website that was intercepted by Meta – he neither alleges he was logged into Facebook nor that he submitted a booking.

Second, even if he did communicate information, the general date and location of an unconfirmed future booking alone is neither "guest record" information nor otherwise "implicates a protectible privacy interest."

**1. Ferriz Fails to Allege an Interaction with the Website that Could Allow his Information to be Intercepted by Meta.**

As explained in *Daghaly*, Ferriz must allege a "communication[] that could have been intercepted" through engagement with the Website, not merely that he "open[ed] the webpage and then clos[ed] it." *Daghaly*, 2024 WL 5134350, *1. But that is all the Ferriz alleges. Indeed, Ferriz's own generic description of Red Roof's Website, even if taken as true, reveals that no interception occurred. As Ferriz describes it, a Website visitor:

(1) "enter[s] their destination and the dates of their stay" ("Date Selection"), (Compl. ¶ 27, fig. 2),

(2) then is "taken to a page to select the property, room, and room rate" ("Room Selection") (*id*.), and

(3) then enters information and then submits check-out information ("Checkout"), (Compl. ¶ 28, fig. 3, 4).

Under Ferriz's own allegations, the alleged interception does not occur until Step 3– the Checkout Page – is submitted. Compl. ¶ 38 ("enters information into the "Guest Information" section. See Figure 3."). However, Ferriz alleges only that he "inputted a destination and the dates of his stay," "selected a room," and "*began* the checkout process." Compl. ¶ 7 (emphasis added). Ferriz does not allege that he *submitted* the Checkout page to complete the booking and thus ever triggered the transmission of information to Meta. *See id*.

Moreover, even if this Court generally interprets Ferriz's allegation to mean that the alleged interception occurs at some point before completing the Checkout,[7] Ferriz does not allege (a) that he entered any information on the Checkout page that would trigger the GET request, or (b) what information was allegedly communicated to Meta at this earlier juncture. It is not for Red Roof or this Court to guess at the confines of Ferriz's claim. Accordingly, Ferriz fails plead a plausible interception of any communication.

**2. Ferriz Fail to Allege the Interception of "Guest Record" Information.**

Ferriz, as in *Mikulsky* and *Posadas*, also fails to allege the interception of information that implicates a protectible privacy interest. The **only** information he alleges he entered is "destination" and "dates of stay." Compl. ¶ 7. Contrary to the Opposition's argument, he does **not** allege that he entered his name, address, number of travelers, payment information, or any other information on the Website. *See id*. A city, random dates, and a hotel name of an un-booked future destination *alone* (*i.e.*, divorced from qualifying information about the potential traveler) is not information that "identifies an individual guest," Cal. Civ. Code § 53.5(c), or information in which Ferriz has a protectable privacy interest." *Mikulsky*, 682 F. Supp. 3d at 864.

The location of a hotel that an *unidentified* individual *might* stay at in the future is routine commercial information (*i.e.*, marketing and advertising) that alone is insufficient to show an invasion of a protectible privacy interest. *See In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (discussing "high bar" cases holding that disclosure of "routine commercial information" like home addresses, geolocation data, and device identifier information do not state an actionable claim

---

[7] This does not appear to be the intent of Ferriz's allegation as his own class allegations include only those individuals who actually "booked travel arrangements" on the Website. Compl. ¶ 66.

for invasion of privacy); *Folgelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 992 (2011) (holding the collection of a customer's ZIP code to obtain their address for marketing purposes did not constitute an invasion of privacy because this "conduct is not an egregious breach of social norms, but routine commercial behavior"); *Rahman v. Marriott Int'l, Inc*., 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) (holding that contact information, gender, birth date, and loyalty account number "lack[ed] the degree of sensitivity required" for standing).

Finally, to be sure, Ferriz does not plausibly allege that the Website conveyed any information that could be used by Meta to tie his identity to this hypothetical future travel information. Specifically, even if a "Facebook ID" were considered information that "identifies an individual guest" Cal. Civ. Code § 53.5(c), which Red Roof disputes, Ferriz does not plausibly plead that this information was maintained and transmitted to Meta (nor could he as this is an ID that Meta itself is alleged to have created). Opp. at 2, 8-9; Compl. ¶ 53. According to Plaintiff's own allegations, Red Roof's Website could only transmit a Facebook ID to Meta if Ferriz "accessed the Website while logged into Facebook." Compl. ¶ 54. However, Ferriz does not allege that he was ever logged into his Facebook account while browsing Red Roof's Website. *See* Compl. ¶ 6. Ferriz does not allege any input any other identify information into the Website.

Ferriz has not plead an injury in fact, nor has one occurred. He does not have Article III standing, and his Complaint must be dismissed.

### B. Ferriz Fails to Adequately Allege a CIPA or Invasion of Privacy Claim.

#### 1. Ferriz Fails to Plausibly Allege "Aiding and Abetting" of a CIPA Violation by Red Roof.

Any alleged liability under CIPA is entirely derivative of an alleged interception by Meta of communications that Plaintiff claims were intended for Red Roof in the first place. Mot. at 11-15; *see* Compl. ¶ 155. Therefore, Ferriz's claim

against Red Roof turns on the fourth provision of CIPA where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Pen. Code § 631(a)(4). Even if Meta had violated any provision of CIPA, Plaintiff must still plausibly plead facts showing how Red Roof actually aided and abetted any of Meta's alleged wrongdoing, which he has not done so here. The Opposition does not effectively dispute this. Opp at 14-15.

As the California Supreme Court explained: "[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's *mens rea*—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (emphasis added).

Although CIPA provides for a private (civil) right of action under Cal. Penal Code § 637.2(a), there is no statutory exception or case law suggesting that the legal standard for aiding and abetting is loosened for such civil cases. After all, the CIPA lives entirely under the California Penal Code. The California Supreme Court has clarified: "[A]n aider and abettor must have criminal intent in order to be convicted of a criminal offense." *People v. Beeman*, 35 Cal. 3d 547, 556 (1984). "[A]n aider and abettor's mental state must be at least that required of the direct perpetrator." *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001) (emphasis added). Aiding and abetting is a "specific intent" crime because it "refers to defendant's intent to do some future act or achieve some additional consequence." *People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). For such crimes, "one may knowingly assist another to commit a crime, yet lack a specific intent that the crime be committed." *Id*. (citations omitted). "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or

encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *In re Meagan R*., 42 Cal. App. 4th 17, 22 (1996). "Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." *In re Lynette G*., 54 Cal. App. 3d 1087, 1094 (1976).

Here, Plaintiff fails to plead facts sufficient to establish the key requirements for aiding and abetting. Specifically, Plaintiff failed to plead facts showing that Red Roof (a) had any knowledge of Meta's allegedly unlawful intent to intercept Plaintiff's alleged communications; (b) harbored an intent to help Meta intercept any alleged communications; (c) shared the same mental state as Meta; (d) knew the "full extent of [Meta's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Meta's alleged commission of a CIPA violation; (e) engaged in conduct that assisted the achievement of the alleged CIPA violation, taking into account factors such as presence at the scene of the violation, companionship, and conduct before and after the offense.

Rather than address these requirements, the Opposition summarily concludes that Red Roof violated CIPA by assisting "Meta in intercepting personally identifiable information, as well as several details about consumers' travel itineraries, including the date of travel and location of travel." Compl. ¶ 32. These are legal conclusions, not well-pleaded facts under *Iqbal* and *Twombly*. And, Courts have held that similarly situated defendants "play[ed] no part in the exchange of data between [Meta] and Plaintiffs." *Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)

### 2. Ferriz Fails to Plausibly Allege an "In-Transit" Interception.

Plaintiff fails to plausibly allege that Meta attempts to learn the "contents" of any communication while "in transit," as required to state a CIPA claim. Cal. Pen. Code § 631(a); *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D.

Cal. 2021) ("[T]he second clause only imputes liability when the defendant reads, or attempts to read, a communication that is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California.") (quotations and citations omitted). Courts have interpreted the "in transit" requirement "narrowly." *Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered electronic storage." *Id*.

When Plaintiff allegedly began entering his booking information on Red Roof's website, he asserts conceptually that (1) when a browser sends a "GET request" with that information "to [Red Roof]'s server"; (2) Meta's "embedded code" on Red Roof's server then "sends . . . instructions back to [Ferriz's] browser"; and (3) those instructions "cause[] the browser to . . . duplicate" and "transmit[]" the booking information "to Meta's servers." Compl. ¶¶ 38-39. Plaintiff further alleges that "*[a]fter* collecting and intercepting this information, Meta processes it, analyzes it, and assimilates it into datasets . . . ." Compl. ¶ 40 (emphasis added).

Thus, Ferriz's own allegations admit that Meta's alleged attempt to learn his date and destination information occurs *after* the information reached Red Roof's servers, not while it was "in transit" to Red Roof's servers. Compl. ¶¶ 37-39. Analyzing virtually identical allegations, a California court held that plaintiffs failed to allege that the defendant website operator "attempted to learn of the information while in transit," because "the duplication and sending of Meta's secret code happens after the requests reaches its destination ([Defendant's] server)." *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 05, 2023). That equally applies here.

### 3. Plaintiff Does Not Plead Adequate Facts Showing "Contents" of his Communication were "Intercepted."

To state a claim under Section 631(a), a plaintiff must allege that the defendant has intercepted the "contents" of a communication. Here, the booking information

Meta allegedly collected also does not amount to "contents" of a communication within the meaning of CIPA. "[C]ontents refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiff alleges conceptually that, under certain configurations, Meta may collect date and location data points. Compl. ¶¶ 7, 52 (alleging meta data for travel destination and trip dates were conveyed to Facebook). "[N]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding plaintiff had not alleged that the tracking technology provider had intercepted "content" because keystrokes, mouse clicks, page views, shipping and billing information, date and time of visit, IP address, location, browser type, and operating system do not constitute "content" under section 631(a)).

A record of dates and locations is just that: record information. *Id.* at 1077 (dismissing CIPA section 631 claim for failure to plead "contents," where a third party tool collected the plaintiff's information from a "purchase from Lululemon's website," including "shipping and billing information"). Although Meta also allegedly collected Plaintiffs' "Facebook ID" (Compl. ¶ 38), the Ninth Circuit has squarely held that a "user's Facebook ID . . . does not meet the definition of 'contents.'" *Zynga Priv. Litig.*, 750 F.3d at 1107.

### 4. Plaintiff Cannot State a Claim for Invasion of Privacy under the California Constitution.

Ferriz's claim for violations of his constitutional right to privacy fails as a matter of law. An invasion of privacy claim under the California Constitution requires a plaintiff to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). Regarding whether a

reasonable expectation of privacy exists, courts consider the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994).

First, Plaintiffs cannot demonstrate reasonable expectation of privacy in information that he voluntarily provided to Red Roof. The use of third-party vendors for a variety of purposes is commonplace on the internet. Reasonable internet users recognize that when they input information on a website, the website operator "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). Where, as here, data is allegedly provided by the customer voluntarily to the retailer and collected for routine commercial purposes, Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information he provided.

Second, the disclosure of de-identified potential travel dates and locations is not an "egregious breach of social norms." Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. Indeed, "[t]he California Constitution and the common law set a high bar for an invasion of privacy claim." *See Low*, 900 F. Supp. 2d at 1025. Courts analyzing similar data privacy issues consistently hold that data collection and disclosure practices to third parties constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See Low*, 900 F. Supp. 2d at 1025 (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was not highly offensive).

The conduct alleged in the Complaint falls far short of the "high bar" for an invasion of privacy claim. *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir.

1997). Because Ferriz failed to allege facts showing that Red Roof engaged in highly offensive conduct, this Court should dismiss this claim with prejudice. *See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *8-9 (N.D. Cal. Dec. 1, 2022) (dismissing intrusion upon seclusion claim because the tracking of plaintiff's bank, where she kept his investments, what car she drove, where she reads his news, interests, use of apps, and that she was physically active is not highly offensive).

### C. Ferriz Consented to the Disclosure of his Information to Meta as a Matter of Law.

Ferriz consented to: (a) Red Roof's Privacy Policy, which allows Red Roof to share information collected on the Website with third-parties (including Meta), and (b) Meta's similar policies, which allow it to receive information from third-parties through its Meta Pixel. *See* Mot. at 19-20.Red Roof's Website conspicuously disclosed to Ferriz that he was agreeing to Reed Roof's Privacy Policy and, as a matter of law under *Ghazizadeh*, 737 F. Supp. 3d at 924-28, his consent nullifies his claims here.

### D. Amendment Would be Futile because Ferriz's Complaint Fails as a Matter of Law.

Finally, this Court should deny leave to amend and deny dismiss the Complaint with prejudice. Ferriz cannot cure the factual deficiencies by proffering facts that contradict his current complaint. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)("[leave to amend is warranted if the deficiencies can be cured with additional allegations that are "consistent with the challenged pleading" and that do not contradict the allegations in the original complaint (quoting *Reddy v. Litton Indus., Inc*., 912 F.2d 291, 296–97 (9th Cir.1990))). To save his Complaint from dismissal, Ferriz's amendment would need to contradict (a) his current Complaint's paragraphs-long recitation the operation of Meta Pixel that concedes that the alleged interception is not "in transit" and (b) his allegation

conceding that did not complete February 2024 booking, and (c) not private or "guest record information was transmitted on the Website. As explained above,"[Ferriz] knows what information he shared and must plead enough facts to state a claim to relief that is plausible on its face." *Posadas*, 2024 WL 5114133, at *5 ("Plaintiff (internal quotation omitted)). If Ferriz had actually completed his booking in February 2024 or if his prior bookings were within the statute of limitations, he could have (and should have) alleged it. This Court should deny leave to amend because no set of facts would avail Ferriz to relief.

## III. CONCLUSION

This Court should Dismiss Plaintiff's Complaint with prejudice.

Dated: January 27, 2025 CLARK HILL LLP

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,773 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Myriah Jaworski*
Myriah Jaworski
Ali Bloom

Attorneys for Defendants RED ROOF INNS, INC., and RED ROOF FRANCHISING, LLC